IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN C.,

       Plaintiff,

  v.                          Civil Action No.
                                5:20-CV-341 (DEP)

COMMISSIONER OF SOCIAL
  SECURITY,

       Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP           MELISSA A. PALMER, ESQ.
250 S. Clinton Street              HOWARD D. OLINSKY, ESQ.
Suite 210
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      LUIS PERE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 17, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)   The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)   The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   August 24, 2021
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN C.,

                                        Plaintiff,

-v-                                     5:20-CV-341

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

## TRANSCRIPT OF PROCEEDINGS
### BEFORE THE HONORABLE DAVID E. PEEBLES
August 17, 2021
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OLINSKY LAW GROUP
    300 South State Street
    Suite 420
    Syracuse, New York 13202
    BY:  **MELISSA A. PALMER, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **LUIS PERE, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1             (The Court and all parties present by telephone.)

2             THE COURT:  Let me begin by thanking both counsel for
3    excellent presentations.  The material that you have provided to
4    the Court in the way of written submissions was extremely
5    helpful.  I found this case to be very interesting.

6             I have before me a challenge to an adverse
7    determination by the Commissioner of Social Security pursuant to
8    42, United States Code, Sections 405(g) and 1383(c)(3)
9    challenging a finding that the plaintiff was not disabled at the
10   relevant times and therefore ineligible for the benefits sought.

11            The background is as follows:  Plaintiff was born in
12   August of 1968 and is currently about to turn 53 years of age
13   shortly.  He was 48 years old at the alleged onset of his
14   disability in August of 2016.  Plaintiff stands 5'11" in height
15   and has weighed at various times between 157 and 166 pounds.
16   Plaintiff lives alone in Auburn, New York.  He did live with his
17   mother who apparently died in May of 2018.

18            Plaintiff has a 10th grade education and did achieve
19   a GED.  He also had six months of vocational training in the
20   field of electrical trades.  The evidence is equivocal as to
21   whether plaintiff was in regular or instead special education
22   classes.  From his function report, it was indicated that he
23   attended school in regular classes, but he advised Dr. Shapiro
24   that he was in special education classes.  Plaintiff apparently
25   suffered from behavioral issues of significance while in school.

1   He also has a history of foster care and, by most accounts, a
2   rough childhood.  Plaintiff is left-handed.  He has a driver's
3   license but no vehicle.
4           Plaintiff stopped working in August of 2016.  At page
5   279, he indicated to his counselor that it was due to stress and
6   back pain.  He advised Dr. Shapiro, at 297, that he left
7   voluntarily because he could no longer stand at work.
8   Plaintiff's past work has included as a dishwasher, a
9   maintenance crew member at McDonald's, a landscaper, an
10  unskilled laborer, and a prep cook.  Plaintiff resumed working
11  in November of 2018 where he works 45 to 50 hours per week
12  picking up 15-pound bundles of newspaper and feeding them into a
13  machine that apparently makes some sort of insulation.
14  Plaintiff testified that he has no difficulty performing his
15  job, but his supervisor does allow him breaks.
16          Physically, plaintiff suffers from possible lumbar
17  sciatica, stenosis, radiculopathy, spondylosis, COPD, and a
18  history of cataract surgery.  Plaintiff, at 303, indicates he
19  was told that he has bulging and/or slipped discs.  Magnetic
20  resonance imaging, or MRI, testing was performed on October 14,
21  2016.  It appears at various locations, the report of that
22  testing, in the record, including at pages 263 and 264, 331 and
23  332, and 275 to 276.  The impression from that testing was
24  mutlilevel degenerative changes of the lumbar spine, seen in
25  association with grade 2 anteriorlisthesis of L5 on S1 with

1   bilateral L5 pars defects; no significant central spinal canal
2   stenosis, although some obliteration of the bilateral foramina
3   at L5-S1; also, moderate lateral recess stenosis and reactive
4   endplate edema at L2-L3; and asymmetric decreased signal
5   intensity of the left kidney maybe due to technical artifact.
6   There was also an indication of some bulging -- mild to moderate
7   bulging at T12-L1, L1-L2, L2-L3, L3-L4, L4-L5.  The plaintiff
8   also underwent an X-ray at -- on March 3, 2007, of his back.
9   That appears at 307.
10          Mentally speaking, the plaintiff suffers from
11  posttraumatic disorder or PTSD, social anxiety disorder,
12  depressive disorder, and schizophrenia.  Some of his stressors
13  have included the fact that his sister died in either 2015 or
14  2016 and a brother died of an overdose in December of 2016, in
15  addition to his mother passing away.
16          Plaintiff was hospitalized at CPEP for 72 hours in
17  2007.  At the time, he was apparently under the influence of
18  cocaine and was regarded as a potential suicide risk.
19  Plaintiff's primary care physician is Sara Zafar.  He has also
20  seen Dr. Renee Melfi to manage his pain since November of 2016.
21  He did in the past receive mental health treatment at the Cayuga
22  County Community Mental Health Center from Licensed Clinical
23  Social Worker Michelle Fiorelli, but testified that although
24  that treatment has helped him, he's not currently undergoing
25  mental health treatment.

1            In terms of medications, plaintiff in the past has
2    been prescribed Ativan, Gabapentin, and Seroquel, although he
3    testified he's no longer taking Gabapentin.  He's also had
4    cortisone injections, pain blocks, and epidural injections.
5    There is some indication in the record that he may have at one
6    point in time undergone physical therapy, but there are no
7    records of physical therapy in the Administrative Transcript.
8    Plaintiff has a history of stimulant, marijuana, and cocaine
9    abuse.  He's also a daily smoker, approximately one and a half
10   packs per day.
11           In terms of activities of daily living, plaintiff is
12   able to dress, bathe, groom, cook, do dishes, clean -- although
13   he denied the ability to clean to Dr. Lorensen -- do laundry,
14   shop -- again, he denied the ability to shop to Dr. Lorensen --
15   he can use public transportation, he watches television, and
16   plays the guitar.
17           Procedurally, plaintiff applied for Title II benefits
18   on December 9, 2016, and Title XVI Supplemental Security Income
19   benefits on January 9, 2017, alleging an onset date of
20   August 16, 2016, in both applications.  He has claimed
21   disability based upon a psychotic disorder, a generalized
22   anxiety order, personality disorder, dysthymic disorder, spinal
23   stenosis of the lumbar area, chronic arthritis of the spine, and
24   schizophrenia.  A hearing was conducted on January 18, 2019,
25   with a vocational expert and plaintiff testifying before

1   Administrative Law Judge Jeremy Eldred.  On January 25, 2019,
2   Administrative Law Judge Eldred issued an unfavorable decision
3   which became a final determination of the agency on January 29,
4   2020, when the Social Security Administration Appeals Council
5   denied plaintiff's application for a review.  This action was
6   commenced on March 26, 2020, and is timely.
7            In his decision, ALJ Eldred applied the familiar
8   five-step sequential test for determining disability.  He first
9   noted that plaintiff had insured status for purposes of his
10  Title II application through June 30, 2018.  At step one, ALJ
11  Eldred concluded that plaintiff had not engaged in substantial
12  gainful activity between August 16, 2016, and November 18th --
13  November of 2018 when he returned to work.  He also noted
14  parenthetically that he has considered plaintiff's return to
15  work as part of the evidence regarding his abilities and
16  limitations.
17           At step two, Administrative Law Judge Eldred
18  concluded that plaintiff suffers from severe impairments,
19  including degenerative changes of the lumbar spine,
20  schizophrenia, depressive disorder, social anxiety disorder,
21  PTSD, and polysubstance abuse.
22           He concluded, however, at step three that plaintiff's
23  conditions do not either singly, or in combination, meet or
24  equal any of the listed presumptively disabling conditions set
25  forth in the Commissioner's regulations.  ALJ Eldred next

concluded that plaintiff retains the residual functional capacity, or RFC, to perform light work, except he can perform only simple routine tasks, can make only simple work-related decisions, can interact with supervisors or coworkers no more than occasionally, is unable to do a job that requires interaction with the public as part of the usual job duties, and can appropriately deal with ordinary changes in an unskilled occupation.

Applying that RFC finding at step four, ALJ Eldred concluded that plaintiff is not cable of performing his past relevant work since he could not meet the exertional requirements of the past relevant work.

At step five, ALJ Eldred concluded first that if plaintiff were capable of performing a full range of light work, a finding of no disability would be required under Medical-Vocational Guidelines or Grid Rule 202.21 and 202.14. Relying on the testimony of the vocational expert who was posed a hypothetical that tracked the RFC finding, ALJ Eldred concluded that plaintiff is capable of performing available work in the national economy and cited as representative positions those of cleaner, photocopy machine operator, and marker, and thus found that plaintiff was not disabled at the relevant times.

As you know, the Court's function in this case is extremely limited and the standard to be applied extremely

1  deferential.  The Court must determine whether correct legal
2  principles were applied and whether the result is supported by
3  substantial evidence, which is defined as such relevant evidence
4  as a reasonable mind would find sufficient to support a
5  conclusion.  The Second Circuit has noted in *Brault v. Social*
6  *Security Administration Commissioner*, 683 F.3d 443 from 2012,
7  that the standard is exceedingly deferential, more so than even
8  the clearly erroneous standard that we as lawyers are familiar
9  with.  The Court also concluded in -- observed, I should say, in
10 *Brault* that under the standard once a fact is found by the
11 Administrative Law Judge, that fact can be rejected only if a
12 reasonable factfinder would have to conclude otherwise.
13         In this case, the plaintiff challenges the RFC
14 finding, both its physical and mental components, as not
15 supported by substantial evidence.  Woven into that is the
16 argument that the Administrative Law Judge failed to fill gaps
17 in the record by either ordering another consultative exam or
18 recontacting plaintiff's care providers.  As a backdrop, I note
19 that it is plaintiff's burden to establish his limitations
20 through the RFC finding at step four, and I note that although
21 represented by counsel, plaintiff did not submit any medical
22 source statements from any treating sources.  Of course, this is
23 not fatal and the plaintiff can carry his burden in other ways,
24 including through the existing evidence in the record and
25 hearing testimony.

1    The first task, and pivotal to the finding of whether
2    the plaintiff is disabled or not, is the determination of
3    plaintiff's RFC which represents a finding of the range of tasks
4    he is capable of performing notwithstanding his impairments.
5    Ordinarily, an RFC represents a plaintiff's maximum ability to
6    perform sustained work activities in an ordinary setting on a
7    regular and continuing basis, meaning eight hours a day for five
8    days a week or an equivalent schedule.  An RFC is informed by
9    consideration of all of the relevant medical and other evidence,
10   and, of course, an RFC finding must be supported by substantial
11   evidence.
12         In this case I previously read the RFC, which
13   includes both the physical ability to perform light work and
14   some mental limitations that were added.  In terms of the mental
15   aspects, there were two medical opinions in the record speaking
16   to that issue.  One is from consultative examiner Dr. Jeanne
17   Shapiro, a report from March 10, 2017, that appears at 297
18   through 301 of the record.  In her report, Dr. Shapiro states
19   that plaintiff appears to -- and I'm not sure quite the
20   significance of the interjection of that phrase -- appears to
21   have certain limitations, many of which are mild, some of which
22   are deemed to be moderate, and moderate to marked limitations in
23   a couple areas, including interacting adequately with
24   supervisors, coworkers, and the public, and in regulating
25   emotions, controlling behavior, and maintaining wellbeing.  The

1   Administrative Law Judge spoke to that opinion on page 16 of the
2   Administrative Transcript and gave it significant weight because
3   Dr. Shapiro had examined the plaintiff and was familiar with
4   Social Security principles.
5              The second opinion that speaks to the mental
6   condition of the plaintiff is from a psychologist, Dr. Fassler,
7   dated March 21, 2017.  It is incorporated within Exhibit 1A of
8   the Administrative Transcript.  Dr. Fassler reviewed the medical
9   evidence, including Dr. Shapiro's report, and concluded that
10  plaintiff retains the mental RFC to perform the basic demands of
11  unskilled work on a sustained basis with limited interpersonal
12  contact.  The Administrative Law Judge spoke, also, regarding
13  that report at page 16 of the Administrative Transcript and gave
14  that report, also, significant weight.
15             I would acknowledge, as plaintiff has argued, that
16  the opinion of ALJ Eldred could have been more robust in
17  addressing the limitations of Dr. Shapiro and how they are
18  consistent with, or not supported by, the evidence -- consistent
19  with the RFC or not supported by the evidence.  I would have
20  liked to have seen a more fulsome discussion concerning those
21  reports and how they interplay with and lead to the mental
22  aspects of the RFC finding, but I'm not able to say that the RFC
23  mental component is not supported by substantial evidence given
24  the extremely deferential standard that I must apply.
25             Turning to the physical components of the RFC, the

1    only opinion evidence addressing that comes from Dr. Elke
2    Lorensen, her report dated March 10, 2017, it appears at page
3    303 through 307 of the Administrative Transcript.  Dr. Lorensen
4    concludes that there are no gross limitations to sitting,
5    standing, walking, or handling small objects with the hands.
6    There are moderate limitations for bending, lifting, and
7    reaching.  The opinion of Dr. Lorensen was discussed by
8    Administrative Law Judge Eldred at page 16 and given significant
9    weight.
10            I find that the residual functional capacity is
11   supported by substantial evidence.  Dr. Lorensen's opinion is
12   somewhat vague.  The use of the term moderate, for example, with
13   regard to reaching and so forth is vague.  The Second Circuit
14   spoke to that in *Curry v. Apfel*.  The plaintiff was deemed
15   capable of performing light work in the RFC, which is defined
16   under 20 C.F.R. Section 404.1567(b) to include, among other
17   things, lifting no more than 20 pounds at a time with frequent
18   lifting or carrying of objects weighing up to 10 pounds.  And
19   the definition goes on, of course, to address other issues.
20            The Administrative Law Judge, once again, could have
21   been more detailed in his explanation, but he did not rely
22   solely on the report of Dr. Lorensen, he relied on the
23   plaintiff's activities of daily living, taking care of his
24   mother, his ability -- and this is discussed at the bottom of
25   page 15, his ability to perform other activities of daily

1  living, including to shop, prepare meals, do general cleaning,

2  and laundry.  He relied on the nonsurgical conservative

3  treatment for plaintiff's back pain, and that's a proper

4  consideration.  Plaintiff testified he was no longer taking

5  Gabapentin for his back pain.

6         The plaintiff also returned to work in November of

7  2018 at a job that included lifting up to 15 pounds occasionally

8  for 45 to 50 hours per week.  The ALJ noted that when asked at

9  the hearing whether his health problems had changed over time,

10 the testimony was that his health is getting worse.  From that,

11 the Administrative Law Judge drew the inference that if his

12 health is worse now than it was before during the relevant

13 period and he is able to work 45 to 50 hours per week at this

14 job, that he also could have worked during the relevant period.

15 I think that's a proper inference to draw.

16        I am unable to say, given those circumstances, that

17 the resulting residual functional capacity physical component

18 was not supported by substantial evidence, so I do find the

19 residual functional capacity, applying the requisite deferential

20 standard, is supported by substantial evidence.  The step five

21 determination, which was based on a vocational expert's

22 testimony, that in turn was based on a hypothetical that tracked

23 the RFC, I find that the Commissioner at step five did carry her

24 burden of proof.  I will therefore award judgment on the

25 pleadings to the defendant and order dismissal of plaintiff's

1  complaint.
2          Thank you both for excellent presentations.  I hope
3  you have a good rest of the summer.
4          MS. PALMER:  Thank you, your Honor.
5          MR. PERE:  Thank you, your Honor.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2
 3                  CERTIFICATE OF OFFICIAL REPORTER
 4
 5
 6      I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR,
 7   Official U.S. Court Reporter, in and for the United States
 8   District Court for the Northern District of New York, DO HEREBY
 9   CERTIFY that I transcribed the foregoing proceedings from a
10   digital recording, and that the foregoing is a true and correct
11   transcript thereof.
12
13              Dated this 19th day of August, 2021.
14
15              s/ Hannah F. Cavanaugh_____
16              HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
17              Official U.S. Court Reporter
18
19
20
21
22
23
24
25
```